No. 20-1992

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| DEMETRIUS ROSS, KEVIN HAMILTON, RONALD SMITH, JONATHAN TOLLIVER, and GLENN VERSER, on behalf of themselves and a class of others similarly situated, | ) ) ) ) ) | On Appeal from the United States District Court for the Southern District of Illinois |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| GREG GOSSETT, ZACHARY ROECKEMAN, STEPHEN DUNCAN, KIM BUTLER, JOSEPH YURKOVICH, SALVADOR GODINEZ, MICHAEL ATCHISON, DAVID WHITE, ANTHONY McCALLISTER, JERRY WITTHOFT, FRANK EOVALDI, ROBERT ARNETT, BRIAN PIPER, DAVID HERMETZ, CHRIS WHITE, KEN FINNEY, MICHAEL GILREATH, TIMOTHY McCALLISTER, ALEX JONES, STEPHANIE DORETHY, ROBERT CRAIG, and RICHARD MOORE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 15-cv-309-SMY-MAB |
| Defendants-Appellants. | ) ) ) | The Honorable STACI M. YANDLE, Judge Presiding. |

**REPLY BRIEF OF DEFENDANTS-APPELLANTS**

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

**KATELIN B. BUELL**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2772
kbuell@atg.state.il.us

Attorneys for Defendants-Appellants

**SARAH A. HUNGER**
Deputy Solicitor General

100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-3312

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................ii

ARGUMENT ............................................................................................................ 1

I.    Plaintiffs Were Required, Yet Failed, To Marshall Significant Proof That Defendants' Shakedown Policy Existed As Plaintiffs Alleged. ......................... 2

    A.    The content of the shakedown policy does not present a common question........................................................................................... 3

    B.    Defendants preserved their commonality argument, and plaintiffs have not rebutted defendants' argument that they failed to present significant proof of the policy they alleged. .............................................. 7

        1.    Defendants did not forfeit their commonality argument. ............ 7

        2.    Plaintiffs have not rebutted defendants' argument that they failed to present significant proof of their version of the policy. .......................................................................................... 9

II.    Plaintiffs Were Required To Show That The Representative Plaintiffs' Claims Were Typical Of the Proposed Class Members' Claims, Not Merely Typical Of Plaintiffs' Allegations...................................................................... 18

III.    Plaintiffs Were Required, But Failed, To Show That Their Purportedly Common Questions Predominate Over The Many Individualized Questions Presented By This Case. .................................................................................. 19

CONCLUSION....................................................................................................... 26

# TABLE OF AUTHORITIES

*Alioto v. Town of Lisbon,*
    651 F.3d 715 (7th Cir. 2011) .............................................................................. 8

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013) ................................................................................*passim*

*Babcock v. White,*
    102 F.3d 267 (7th Cir. 1996) ............................................................................ 23

*Bell v. PNC Bank, N.A.,*
    800 F.3d 360 (7th Cir. 2015) .............................................................................. 5

*Bridges v. Gilbert,*
    557 F.3d 541 (7th Cir. 2009) ............................................................................ 22

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago,*
    797 F.3d 426 (7th Cir. 2015) ............................................................................ 22

*CNH Industrial America LLC v. Jones Lang LaSalle Americas, Inc.,*
    882 F.3d 692 (7th Cir. 2018) .......................................................................... 8, 9

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013) ........................................................................................... 19

*Costello v. BeavEx, Inc.,*
    810 F.3d 1045 (7th Cir. 2016) ........................................................................... 5

*Cranberry Growers Cooperative v. Layng,*
    930 F.3d 844 (7th Cir. 2019) .............................................................................. 9

*Dancel v. Groupon, Inc.,*
    949 F.3d 999 (7th Cir. 2019) ....................................................................*passim*

*Doe v. Welborn,*
    110 F.3d 520 (7th Cir. 1997) ............................................................................ 22

*Harper v. Sheriff of Cook Cnty.,*
    581 F.3d 511 (7th Cir. 2009) ............................................................................ 21

*Hope v. Peltzer,*
    536 U.S. 730 (2002) ................................................................................... 12, 13

*In re Allstate Corp. Sec. Litig.*,
    966 F.3d 595 (7th Cir. 2020) ........................................................... 20

*Jamie S. v. Milwaukee Public Schools*,
    668 F.3d 481 (7th Cir. 2012) ........................................................... 10

*Lawson v. Sun Microsystems, Inc.*
    791 F.3d 754 (7th Cir. 2015) ........................................................... 8

*Lord v. Beahm*,
    952 F.3d 902 (7th Cir. 2020) ........................................................... 22

*McFields v. Dart*,
    982 F.3d 511 (7th Cir. 2020) ................................................... *passim*

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ........................................................... 15

*MMG Fin. Corp. v. Midwest Amusement Parks, LLC*,
    630 F.3d 651 (7th Cir. 2011) ........................................................... 13

*Monell v. New York City Department of Social Services*,
    436 U.S. 658 (1978) ....................................................................... 11

*Orr v. Shicker*,
    953 F.3d 490 (7th Cir. 2020) ........................................................... 15

*Packer v. Trustees of Indiana University School of Medicine*,
    800 F.3d 843 (7th Cir. 2015) ........................................................... 9

*Parko v. Shell Oil Co.*,
    739 F.3d 1083 (7th Cir. 2014) ......................................................... 4

*Perkins v. Pfister*,
    711 F. App'x 335 (7th Cir. 2017) ................................................... 12

*Sanville v. McCaughtry*,
    266 F.3d 724 (7th Cir. 2001) ........................................................... 24

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*,
    782 F.3d 922 (7th Cir. 2015) ........................................................... 8

*Spano v. The Boeing Co.*,
    633 F.3d 574 (7th Cir. 2011) ........................................................... 15

*Stewart v. Special Adm'r of Estate of Mesrobian*,
     559 F. App'x 543 (7th Cir. 2014) ....................................................... 12

*Suchanek v. Sturm Foods, Inc.*,
     764 F.3d 750 (7th Cir. 2014) ...................................................... 6, 22

*Szabo v. Bridgeport Machines, Inc.*,
     249 F.3d 672 (7th Cir. 2001) .................................................... 15, 20

*Terry v. Gary Cmty. Sch. Corp.*,
     910 F.3d 1000 (7th Cir. 2018) ........................................................ 8

*Tyson Foods, Inc. v. Bouaphakeo*,
     136 S. Ct. 1036 (2016) ............................................................ 19, 22

*Wal-Mart Stores, Inc. v. Dukes*,
     564 U.S. 338 (2011) ...........................................................*passim*

**Rules**

Fed. R. App. P. 28(a)(8) .................................................................... 13

Fed. R. App. P. 28(a)(8) .................................................................... 13

Fed. R. Civ. P. 23(a)(2) ............................................................... 1, 2, 4

Fed. R. Civ. P. 23(a) .................................................................. 1, 3, 18

Fed. R. Civ. P. 23(a)(4) ..................................................................... 7

Fed. R. Civ. P. 23(b)(3) ................................................................. 1, 20

## ARGUMENT

Plaintiffs' response proceeds from the incorrect argument that they did not need significant proof that the shakedowns were undertaken pursuant to an unconstitutional policy because defendants acknowledged that the shakedowns were conducted pursuant to *a* policy. Among other flaws, this argument ignores that defendants disagree with plaintiffs about the content of the policy and also that, as to the proposed common question, the class members' claims must prevail and fail in unison. But here, if the jury were to decide that the shakedown policy was *not* as plaintiffs allege—which is likely, given the lack of significant proof shown—then each class member could attempt to prove an unconstitutional shakedown on the particular facts of his experience. Moreover, even if plaintiffs had identified a proper common question in whether the shakedown policy existed as they alleged, it still was an abuse of discretion to grant class certification, because resolution of that question would resolve only one small part of the case. The district court would still need to conduct thousands of mini-trials to determine whether the individual inmates suffered an Eighth Amendment violation and, if so, whether they are entitled to damages.

## I. Plaintiffs Were Required, Yet Failed, To Marshall Significant Proof That Defendants' Shakedown Policy Existed As Plaintiffs Alleged.

In their opening brief, defendants explained that, under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), Rule 23(a)(2)'s commonality component required plaintiffs to offer "significant proof" that their alleged shakedown policy existed

despite defendants' denials. AT Br. Part II.A.[1] Plaintiffs respond that enforcing *Wal-Mart*'s significant proof standard would require them "to prove their success on the merits of their claims," which would be improper at the class certification stage. AE Br. 20 (Header I.A.). Plaintiffs are incorrect. It is settled that determining whether a common question exists may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351; *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").[2]

Recently, in *McFields v. Dart*, 982 F.3d 511 (7th Cir. 2020), and *Dancel v. Groupon, Inc.*, 949 F.3d 999 (7th Cir. 2019), this court described the extent to which a merits assessment is permissible when determining whether a common question exists. First, the court can and must consider the merits to confirm that "'there is no risk whatever that a failure of proof on the common question . . . will result in individual questions predominating.'" *Dancel*, 949 F.3d at 1005 (quoting *Amgen*,

---

[1] Plaintiffs mischaracterize defendants' argument as requiring them to "prove" their version of the shakedown policy. *E.g.*, AE Br. 23 (describing defendants' argument as requiring plaintiffs to "*prove*[ ] that the contents of the policy exist as they contend" and citing AT Br. 21) (emphasis in original); *id.* at 26 (plaintiffs are not "required to prove that the common plan . . . existed as they claim"). This is a straw man. Defendants consistently described plaintiffs' burden as to "present 'significant proof,' *Wal-Mart*, 564 U.S. at 353," of the alleged policy. *E.g.*, AT Br. 21.

[2] Plaintiffs cite *Amgen* in support of their commonality argument. *E.g.*, AT Br. 19, 22, 25, 32. *Amgen*, however, decided no question relevant to Rule 23(a)(2); the question presented was whether Rule 23(b)(3)'s predominance requirement was satisfied. 548 U.S. at 459.

568 U.S. at 467-68).[3]  Second, even if the proposed common question will not be

undermined by a failure of proof by the plaintiffs, the answer to that question must

be relevant to more than "just one small part of the analysis."  *McFields*, 982 F.3d

at 517.  Undertaking the "peek" at the merits that this court's precedents require,

*Dancel*, 949 F.3d at 1005, establishes that commonality is not present here.

A.    **The content of the shakedown policy does not present a common question.**

Plaintiffs' request for class certification proceeded from the following

purportedly common question:  whether the "uniform shakedowns at the four

prisons were executed . . . in the manner Defendants contend, or instead in the

manner Plaintiffs contend, including:  the unnecessarily intimidating manner in

which the tact team entered the living units; the reverse strip search; the

unnecessarily painful handcuffing, which the class members were forced to endure

for lengthy period of time; the orders to march so closely that their genitals were

forced to make contact with other prisoners in line; and the forced stress positions

in the holding area."  Doc. 481 at 27.[4]

---

[3] In *Dancel*, this court did not decide whether commonality was satisfied because the plaintiff failed to meet the predominance requirement.  949 F.3d at 1004. However, the court stated that its analysis applied to "resolv[e] whether a common question exists *or* predominates."  *Id.* at 1005 (emphasis added).

[4] Plaintiffs identified three additional purportedly common questions—(1) whether the shakedowns violated the Eighth Amendment, (2) whether the supervisory defendants "knew, facilitated, approved, condoned, and/or turned a blind eye to the uniform shakedown practice," and (3) whether the supervisory defendants "reached agreement among themselves and/or others to perform the shakedowns in the uniform unconstitutional manner alleged by the class."  Doc. 481 at 27-28.  The first is flawed because commonality requires more than that the class members allegedly

This is not a common question, for if a jury were to answer it for the supervisory defendants, and conclude that the shakedown policy was not as plaintiffs contend, then each class member would remain free to pursue an individual claim that *he* endured a reverse strip search, unnecessarily painful handcuffing, and/or any of plaintiffs' other alleged departures from Department policy, and, in addition, that any such departure violated the Eighth Amendment. In other words, plaintiffs' question will not necessarily generate a "common *answer*[ ] apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotations omitted) (emphasis in original). That does not describe a question suitable for class certification. *See Dancel*, 949 F.3d at 1006 (question must be "common regardless of its answer"); *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1086-87 (7th Cir. 2014) ("[f]or if the defendants are right, there is no common issue, only individual issues that will vary from" class member to class member); *see generally Wal-Mart*, 564 U.S. at 350 ("The common contention . . . must be of such a nature that it is capable of class-wide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

*Dancel* illustrates this point. There the plaintiff sought to certify a class of Instagram users on a theory that the defendant had violated the class members'

---

"have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 350. And the other two do not satisfy Rule 23(a)(2) because they would be reached only if the jury answers plaintiff's initial question in their favor, by deciding that plaintiffs' version of the shakedown policy is correct.

rights under Illinois's Right of Publicity Act (which prohibits the use of a person's "identity" for commercial purposes without consent) by adding to its website publicly available pictures from Instagram, including the unique, user-selected username of the Instagram account whose photo was being displayed. *Dancel*, 949 F.3d at 1002. The plaintiff identified "whether Instagram usernames *categorically* fall within the statutory definition of 'identity'" as a common question suitable for resolution on a class-wide basis. *Id.* at 1003 (internal quotations omitted) (emphasis in original). This court disagreed. As the court explained, if the plaintiff was incorrect—that is, if Instagram usernames are not categorically identities under the IRPA—then each member of the proposed class could still seek to establish that her username was an identity under the Act. *Id.* at 1007. Under these circumstances, "[n]othing significant will have been decided, because each member could provide individualized evidence—her username's content—on top of the common evidence to provide her username is an identity." *Id.*

In reaching this conclusion, the court distinguished two cases—*Bell v. PNC Bank, N.A.*, 800 F.3d 360 (7th Cir. 2015), and *Costello v. BeavEx, Inc.*, 810 F.3d 1045 (7th Cir. 2016)—on which plaintiffs rely. *See* AE Br. 23. As the court explained, *Bell* and *Costello* were cases where, if the plaintiffs failed to prevail on the merits of their proposed common question, "[a]ny individual class members with a claim remaining would have to rely on different proof to answer a different question to establish the defendant's liability." *Dancel*, 949 F.3d at 1006. That was not the case in *Dancel*, *id.* at 1006-07, and it is not the case here. Here, as in

*Dancel*, if plaintiffs' "common proof fail[s]" to persuade a jury that the shakedown policy existed as plaintiffs alleged, then any class member could still "use individualized proof" to establish that his shakedown was characterized by conduct (such as a reverse strip search or too-tight handcuffs) that may have violated the Eighth Amendment. *Id.* at 1006. Under these circumstances, plaintiffs cannot show, as they must, that as to the proposed common question, "'the class is entirely cohesive: It will prevail or fail in unison.'" *Id.* at 1005-06 (quoting *Amgen*, 568 U.S. at 460); *accord Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014) (question is suitable for certification only if "[t]he claims of every class member will rise or fall on [its] resolution").

Plaintiffs seek to avoid this result by arguing that, if a jury were to decide that the shakedowns were not conducted as they contend, then defendants would be "entitled to summary judgment or a verdict in their favor as to the class as a *whole*." AE Br. 22 (emphasis in original); *see also id*. at 24 (evidence that shakedowns occurred as defendants contend "would tend to preclude liability for Appellants to the class as a whole"). But if plaintiffs were to fail to prove their version of the shakedown policy, class members would be prohibited only from arguing that there was a policy of treating class members as plaintiffs describe; each class member could still seek to prove the particular facts of his shakedown experience, with the result that "[n]othing significant will have been decided" as a result of the first round of litigation. *Dancel*, 949 F.3d at 1007; *see also id*. (if plaintiff were to fail to prove that Instagram usernames are "categorically an identity," "individual claims

would not be hindered by the preclusion of a content-ignorant theory").  Alternately, if plaintiffs are saying that, if the jury rejects their version of the shakedown policy, they intend to ensure judgment is entered for defendants by waiving potential individual claims, then they would not "fairly and adequately protect the interests of the class," Rule 23(a)(4), and class certification should be rejected on this basis.[5]

### B. Defendants preserved their commonality argument, and plaintiffs have not rebutted defendants' argument that they failed to present significant proof of the policy they alleged.

In the alternative, plaintiffs argue that defendants forfeited one aspect of their commonality argument, AE Br. Part I.B.1., and that they satisfied their burden by proffering "substantial" and "consistent" evidence of their version of the shakedown policy, *id*. at Part I.B.2. & I.B.3. (quoting headers).  Plaintiffs are incorrect at every turn:  defendants did not forfeit any aspect of their commonality argument, and, on the merits, although plaintiffs obfuscate their proposed common question and misdescribe the record, they cannot overcome the fact that the district court, by its own admission, relied on allegations rather than evidence because the significant proof that plaintiffs needed was not there.

### 1. Defendants did not forfeit their commonality argument.

Plaintiffs press the same argument that they made in response to defendants' petition for interlocutory appeal, 7th Cir. App. No. 20-8011, Doc. 9 at 9:  that defendants' appeal includes a forfeited "numerical sufficiency argument," AE Br. 27-

---

[5] Defendants did not previously raise adequacy of representation because plaintiffs have not, until now, indicated an intention to waive individual claims.

28 (quoting header). But the argument purportedly forfeited—that plaintiffs' anecdotal evidence was insufficient because it accounts for less than 1% of the total class—is not a new theory appearing for the first time on appeal but merely a permissibly expanded version of defendants' argument below. *See, e.g.*, *Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1008-09 (7th Cir. 2018); *Lawson v. Sun Microsystems, Inc.*, 791 F.3d 754, 761 (7th Cir. 2015); *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 927 (7th Cir. 2015). On appeal, defendants argue that plaintiffs failed to present significant proof of their claimed policy because the inmates' anecdotal accounts were insufficient to describe the experience of the class as a whole and were varied and inconsistent across class members. AT Br. 21-24. This is not meaningfully different from the argument defendants pressed below, where they argued that plaintiffs failed to show significant proof of a policy because plaintiffs relied on the inmate accounts alone and those accounts were conflicting and variable. *See generally* Doc. 491 at 15-17, 21, 23-28.

Moreover, plaintiffs' cases (AE Br. 27-28) are distinguishable. In *Alioto v. Town of Lisbon*, 651 F.3d 715 (7th Cir. 2011), this court found forfeiture where a plaintiff "failed to meet the myriad arguments set out in the defendants' motions to dismiss," and then "doubled down on his waiver by failing to grapple on appeal" with the district court's reasoning. *Id.* at 720-21. In *CNH Industrial America LLC v. Jones Lang LaSalle Americas, Inc.*, 882 F.3d 692 (7th Cir. 2018), the court declined to entertain a party's argument on appeal that was "directly contrary" to

its argument below. *Id.* at 705. In *Packer v. Trustees of Indiana University School of Medicine*, 800 F.3d 843 (7th Cir. 2015), the plaintiff "consistently failed to support her factual assertions with appropriate citations to the relevant portions of the record" when responding to summary judgment; the court declined to "pass on the sufficiency of the more developed factual case that [the plaintiff's] counsel has made on appeal." *Id.* at 848. And in *Cranberry Growers Cooperative v. Layng*, 930 F.3d 844 (7th Cir. 2019), the court declined to consider a constitutional challenge that a party admittedly raised for the first time on appeal. *Id.* at 856-57.

This case is nothing like these. Defendants' theory—that plaintiffs failed to meet the commonality requirement because they relied on the inmates' varied accounts to provide significant proof that the shakedowns occurred as they alleged—is unchanged. Plaintiffs' hair-splitting argument that defendants below "centered on the *quality* of Plaintiffs' evidence rather than its sufficient *quantity*," AE Br. 28 (emphases in original), accurately describes neither defendants' argument below nor any circumstance in which this court has found forfeiture.

2. **Plaintiffs have not rebutted defendants' argument that they failed to present significant proof of their version of the policy.**

When they finally engage with defendants' significant proof argument, plaintiffs attempt to meet this requirement in several ways. But each point goes nowhere.

*First*, plaintiffs argue that the factual record here is distinguishable from *Wal-Mart* because it includes "admissions" from the supervisory defendants that "certain aspects of the shakedown were part of their common plan," as well as

testimony from tact team members that their conduct was "uniform." AE Br. 29.

But these distinctions are immaterial to whether a common question exists. Again,

plaintiffs' class certification request depended on defendants having conducted the

shakedowns pursuant to a policy that included reverse strip searches, unnecessarily

painful handcuffing, marching so that one inmate's genitals touched another's

backside, and waiting in uncomfortable positions for prolonged periods. Doc. 481 at

27. Neither the supervisory defendants nor the tact team members admitted this;

thus, plaintiffs were required to present significant proof that the policy existed as

they described. AT Br. 21. Otherwise, class certification would be appropriate any

time a defendant admitted that it operated under a policy, even if the defendant

disputed that the policy was as the plaintiffs claimed. This is not the law. *See Wal-*

*Mart*, 564 U.S. at 353 (where plaintiffs alleged that defendant "operated under a

general policy of discrimination," and defendant's "announced policy forbids" such

discrimination, plaintiffs required to present "significant proof" of claimed policy)

(cleaned up).[6]

Moreover, if plaintiffs wish to limit their proposed question to the "aspects" of

the "common plan" that defendants admitted, AE Br. 29, they could not establish

---

[6] Plaintiffs' distinction of *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th
Cir. 2012) (discussed at AT Br. 23), *see* AE Br. 28 n.13, also rests on immaterialities.
There, this court held that "as in *Wal-Mart*, proof of an illegal policy [wa]s entirely
absent," 698 F.3d at 498 (internal quotations omitted), because the plaintiffs' expert
reviewed the files of only 200 of some 16,000 class members, *id.* at 488. The court
noted that the failure to review enough files to "yield a conclusion" of a "systemic
violation" of the IDEA, *id.*, precluded a finding that there was "significant proof"
that the defendant operated under an unlawful policy, *id.* at 498.

commonality for a different reason: the existence of defendants' admitted policy would be "relevant to just one small part of the analysis" and impermissibly leave the court "far from resolving the litigation on a classwide basis." *McFields*, 982 F.3d at 517. *McFields* illustrates this point. There, the plaintiff brought a class action challenging the defendant's alleged policy of failing to give a face-to-face assessment to every detainee who complained of dental pain. *Id.* at 514. The court held that the proposed question—"whether there even *exists* a policy that does not give face-to-face assessments to all detainees who complain of dental pain"—should not be certified because its answer "is relevant to just one small part of the analysis required." *Id.* at 516-17 (emphasis in original). As the court explained, even if this question were answered in the affirmative, the court would still have to decide whether the policy "was objectively unreasonable as to each individual class member based on his or her specific circumstances," whether each member "suffered a constitutional injury," and "whether each of those injuries was proximately caused by the unreasonable policy." *Id.* at 517. This was insufficient to "resolv[e] the litigation on a classwide basis." *Id.*[7]

Should plaintiffs limit their proposed question to the "aspects" of the shakedown plan that defendants admitted, the same result would obtain here. For

[7] In *McFields*, the existence of a policy was an element of the plaintiff's claim because it was brought pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). 982 F.3d at 516. Although this is not a *Monell* case, *McFields* is instructive because, as explained, notwithstanding the existence of defendants' "admitted" policies, class members would have to prevail on several questions requiring individualized assessments to show an Eighth Amendment violation—just as in *McFields*.

example, defendants acknowledged that Department policy and training required inmates to be handcuffed behind the back with palms facing out, because that is more secure, unless the inmate has a medical permit requiring front cuffs. AT Br. 8-9; *see* AE Br. 33-34 (complaining about rear-cuffing policy). But this policy does not violate the Eighth Amendment. *See Perkins v. Pfister*, 711 F. App'x 335, 337 (7th Cir. 2017) ("We do not agree with Perkins that, as a matter of law, the Eighth Amendment would be violated by a policy requiring inmates during periods of heightened security to navigate stairs while handcuffed behind the back."); *Stewart v. Special Adm'r of Estate of Mesrobian*, 559 F. App'x 543, 546-47, 548 (7th Cir. 2014) (rejecting inmate's broad challenge to prison policy of requiring "security box" over handcuffs absent exemption from medical director, and limiting challenge to inmate's individual circumstances). Rather, whether an inmate may succeed on an Eighth Amendment claim challenging the rear-cuffing policy would depend on individualized factors, including whether the handcuffing caused him unnecessary pain and physical injury, and whether the defendants knew that would happen. *See* AT Br. 31-32 (collecting cases); *see generally Hope v. Peltzer*, 536 U.S. 730, 738 (2002) (handcuffing is actionable if it "amounts to gratuitous infliction of 'wanton and unnecessary' pain").

The same is true of plaintiffs' claim that the inmates were required to wait in uncomfortable positions for prolonged periods. AE Br. 33. Again, defendants admit that that, for security, inmates were directed to waiting areas while their cells were being searched. AT Br. 9. These waiting periods would be actionable under the

Eighth Amendment only if the defendants knew that they were unnecessary, and unnecessarily risked pain and physical injury. *See Hope*, 536 U.S. at 738 (requiring inmate to remain handcuffed to hitching post for seven hours violated Eighth Amendment because "safety concerns had long abated" and defendants "knowingly subjected him" to substantial risk of physical harm and unnecessary pain). These inquiries require inmate-by-inmate assessments, precluding the existence of defendants' admitted policies from satisfying the commonality requirement. *See McFields*, 982 F.3d at 517-18.

*Second*, plaintiffs argue that "each piece of evidence discusses conduct that was aimed at 2 to approximately 40 individuals," and "amount[s] to testimony about the treatment of as many as 4,360 class members." AE Br. 30. Because this argument lacks record citations, it is forfeited. *See* FRAP 28(a)(8), 28(b) (argument section must include "citations to the authorities and parts of the record on which the [party] relies"); *see also MMG Fin. Corp. v. Midwest Amusement Parks, LLC*, 630 F.3d 651, 659 (7th Cir. 2011) (presentation of "general . . . references to testimony and evidence" without record citations forfeits argument on appeal). Indeed, applying forfeiture would be particularly appropriate because it is impossible, given the absence of record citations, for defendants to meaningfully respond to plaintiffs' claim that the inmate accounts described the treatment of "as many as 4,360 class members." AE Br. 30.

Forfeiture aside, plaintiffs' argument depends on inmate testimony that (1) "orders" that the inmates stand closely together in line "were announced to the

whole group being searched," (2) the tact team members "shouted vulgarities . . . loudly for many to hear," and (3) "orders given in the common area . . . were similarly yelled to all individuals in the area." *Id.* But the described testimony provides no indication *how many* inmates heard these "orders" and "vulgarities." Equally important, such testimony—if it exists—would shed no light on how many inmates were subjected to reverse strip searches, unnecessarily painful handcuffing, marching so that one inmate's genitals touched another inmate's backside, and waiting in unnecessarily uncomfortable positions for prolonged periods, which are critical parts of the alleged policy on which plaintiffs' certification request depends.

*Third*, plaintiffs argue that the district court's decision is entitled to deference notwithstanding the fact that the court stated that it was relying on plaintiffs' allegations when holding that plaintiffs satisfied the commonality requirement. AE Br. 31-32. Plaintiffs admit that the district court "use[d] the word 'allege' at times," but submit that "context makes it clear that the Court used this word to indicate that it was resolving factual disputes only insofar as it was necessary to determine class certification." *Id.* at 32. Not so. In its barely two-page commonality discussion, the district court acknowledged that the evidence showed that "some inmates did not remember or did not experience one or more of the[ ] alleged events," but nevertheless held without reasoning that there is "sufficient evidence of . . . uniform conduct." Doc. 519 at 8; A8. Given the thinness of its analysis, the district court should be taken at its word: it erroneously relied on plaintiffs' allegations to satisfy the class certification requirements.

Here, again, plaintiffs' cases are not on point.  *See* AE Br. 31-32 (quoting *Spano v. The Boeing Co.*, 633 F.3d 574 (7th Cir. 2011), and *Orr v. Shicker*, 953 F.3d 490 (7th Cir. 2020)).  Neither suggests that a court may rely on allegations when determining whether a common question exists, much less describes a circumstance under which a court's statements indicating that it did so may be disregarded.  In *Spano*, the plaintiffs challenged practices that the defendants followed when administering retirement plans.  633 F.3d at 576, 585-86.  But, unlike here, the defendants did not dispute the existence of those practices.  Similarly, in *Orr*, the defendants did not dispute the existence of the challenged policies (there, the policies for treating inmates with hepatitis-C, 953 F.3d at 493), or that they applied to all IDOC inmates, *id.* at 499.

*Fourth*, plaintiffs argue that the inmate accounts are not inconsistent or, if they are, any inconsistencies are not meaningful.  AE Br. 33-35.  At the threshold, to the extent plaintiffs believe that the *absence* of evidence should be counted in their favor, *e.g., id*. at 34 (positing that defendants' description of inconsistencies among inmate accounts "consists not of affirmative evidence of inconsistency, but simply of omissions"), they are wrong.  Plaintiffs carry the burden to show that class certification is appropriate, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012), and there is no presumption that plaintiff's factual allegations are true at this stage, *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001); *see also* AT Br. 19 (collecting cases).  Thus, because plaintiffs failed to identify sufficient evidence to show substantial proof of the shakedown

policy they claimed, plaintiffs' suggestion that defendants had an obligation to identify inmates who "affirmatively denie[d]" experiencing what plaintiffs alleged is wrong. AE Br. 35.

That leaves plaintiffs' efforts to downplay the inconsistencies and variation among the inmates' accounts. *See id*. at 33-35. Plaintiffs don't controvert defendants' argument that an insufficient number of the 111 inmates about whom specific evidence was presented testified to a reverse strip search (which would have been against Department policy and training). AT Br. 8. Instead, plaintiffs mischaracterize defendants' position, maintaining that defendants rely solely on the "misleading example" of a wheelchair-bound prisoner "who was strip searched differently." AE Br. 35. But defendants did not rely on a single inmate: they noted that of the 111 inmate accounts presented, barely half (58) reported a reverse strip search. AT Br. 10. Because it was plaintiffs' burden to show commonality, it must be presumed at this stage that if an inmate was silent about whether he experienced a reverse strip search, he did not.

Plaintiffs also provide no answer to defendants' argument that an insufficient number of the 111 inmates testified that they experienced derogatory and offensive language or excessive force—which, again, would have been against Department policy and training. *See id*. at 7-8, 9.[8] And plaintiffs admit that the inmates described varying wait times, but argue that these variations should be overlooked

---

[8] For example, plaintiffs do not dispute that only 20 inmates recalled being told to line up "nuts to butts," *compare* AT Br. 10-11 *with* AE Br. 34-35 n.15, the phrase to which they attribute particular significance, *see* AE Br. 9

because "lengthy" wait periods "flowed from Appellants' common plan." AE Br. 33. If by "common plan" plaintiffs mean that defendants agreed that the inmates would wait in a holding area while the cells were searched, AT Br. 8, that "plan" is insufficient to establish commonality given the remaining questions that require inmate-by-inmate assessment, *supra* pp. 12-13. Plaintiffs' argument that "divergences . . . in how the cuffing was subjectively described are completely irrelevant," AE Br. 34, is wrong for the same reason, *supra* p. 12.

Finally, plaintiffs argue that defendants misdescribe the record, although with regard to the line formations only. AE Br. 35. In their opening brief, defendants described the evidence as showing that 77 of the 111 inmates reported being required to walk so close together than their genitals touched another inmate, while the remaining 34 inmates did not. AT Br. 10-11. On further review, plaintiffs' statement that "[f]or 4 of the 34, [defendants] are just wrong—these class members *do* affirmatively describe genital contact," AE Br. 35 (emphasis in original), is partially correct. Two of these four described genital contact and two did not.[9] As for the remaining 32 inmates who did not describe genital touching, plaintiffs lay their silence at the feet of defendants, whom they state should have "ask[ed] a clear question" on the topic, given that they purportedly "had unilateral control over the questioning." *Id*. Again, at the class certification stage, the burden was plaintiffs' and any gaps in the record must be construed in defendants' favor.

---

[9] *Compare* R. 481-39 at 14:10-12 (Fischer describing genital touching) and R. 481-32 at 34:21-36 (Hamilton describing same) *with* R. 491-7 at 19 (Anderson stating that he can't recall shakedown at issue) and R. 491-7 at 29 (Russo stating same).

Here, the court below approved defense counsel's "open-ended questions" of the inmates, which the court deemed appropriately non-coercive, and plaintiffs were free to re-interview any inmate if they believed doing so would work in their favor. Doc. 416 at 2; *see also* Doc. 425. Finally, in a footnote, plaintiffs state that the 32 inmates described "close physical contact," which they view as "consistent with Plaintiffs' articulation of [the] uniform plan." AE Br. 35 n.18. Again, because plaintiffs had the burden, it was their responsibility to identify evidence that supported (and was not merely "consistent with") their version of the shakedown plan; this required evidence of genital touching, which 32 inmates did not provide.

## II. Plaintiffs Were Required To Show That The Representative Plaintiffs' Claims Were Typical Of the Proposed Class Members' Claims, Not Merely Typical Of Plaintiffs' Allegations.

The typicality "requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *McFields*, 982 F.3d at 518 (internal quotations omitted). Moreover, as with the other Rule 23 criteria, typicality requires the party seeking certification to "'affirmatively demonstrate[ ] his compliance'" with the requirement. *Id.* (quoting *Wal-Mart*, 564 U.S. at 350) (cleaned up); *see also* AT Br. 27. Plaintiffs give lip service to typicality, AE Br. 36, but do not explain how it is satisfied here.

For starters, while plaintiffs appear to recognize that the district court improperly relied on allegations rather than evidence, AE Br. 39 (describing court's reasoning as "at-worst-inartful"), they provide no alternate basis for affirmance. Instead, they spend nearly three pages explaining how each named representative's

testimony mirrored the complaint's allegations. *Id*. at 37-39. But neither the named representatives' testimony nor any other evidence plaintiffs identified showed typicality. To be sure, this is for many of the same reasons that the evidence failed to show commonality, but that is not unusual. *See McFields*, 982 F.3d at 518 ("Though a separate inquiry from the commonality question, our conclusion here flows from the same defects described above."). As explained, AT Br. 27-28, without significant proof of an unlawful policy, there is no reason to believe that the named representatives' claims share the "same essential characteristics" as the other putative class members'. *McFields*, 982 F.3d at 518 (internal quotations omitted). On the contrary, a named representative who experienced some or even all of the alleged actions would not have a claim that is typical of an inmate who reported different conduct. Evaluating each class member's claims will thus "require[ ] a highly individualized inquiry; each [member's] case is different, and, therefore, no case is typical.*" Id.* (internal quotations omitted).

### III.  Plaintiffs Were Required, But Failed, To Show That Their Purportedly Common Questions Predominate Over The Many Individualized Questions Presented By This Case.

As discussed, AT Br. 29, the predominance requirement is subject to a "rigorous analysis" that "is even more demanding" than commonality and typicality, *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013). Courts must "give careful scrutiny to the relation between common and individual questions in a case," *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016), and "engage with the merits of the case . . . [to] understand what the plaintiffs will need to prove and [to]

evaluate the extent to which they can prove their case with common evidence," *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 603 (7th Cir. 2020). The district court here did not scrutinize this relationship, evaluate the elements of the claims presented, or meaningfully assess whether plaintiffs could prove constitutional violations with evidence common to the class. Instead, the court rested its predominance finding on the conclusory statement that "common questions inherent in Plaintiffs' Eighth Amendment claims predominate over individualized questions." Doc. 519 at 12; A12. The court's determination that predominance was satisfied thus was an abuse of discretion. *See Szabo*, 249 F.3d at 675-76 (abuse of discretion for court to rely on plaintiffs' allegations and not conduct "independent judicial review").

Plaintiffs disagree, claiming, without citation, that the district court concluded that "any individualized inquiries did not defeat the importance and efficiency of resolving the principal issues in a single proceeding." AE Br. 45. But the court made no such finding in its predominance analysis. Doc. 519 at 11-12; A11-12. Nor is there any indication that the court "drew on its own substantial experience managing class actions," AE Br. 45, as plaintiffs assert. Finally, the court's string citation to cases "claiming the existence of widespread or uniform policies," Doc. 519 at 11; A11, which plaintiffs tout as a sign of a substantive analysis, AE Br. 45, does not satisfy the rigorous review that Rule 23(b) demands.

In any event, plaintiffs failed to show that common questions would predominate over the many individualized issues presented by this case. As explained, AT Br. 30-32, the variation in and inconsistencies among the inmate

experiences make this case ill-suited for class-wide disposition. Even if plaintiffs had proffered a proper common question about the policy implemented by defendants (which they have not), the court would still need to conduct thousands of mini-trials to determine whether the individual inmates—who have thus far reported a wide variety of experiences, *id*. at 9-12—suffered an Eighth Amendment violation and, if so, whether they are entitled to damages.

Plaintiffs assert, however, that these differences are immaterial because to prove deliberate indifference, they can rely on "classwide evidence that the shakedown plan was intended to be humiliating without penological justification and was communicated to tact team members to execute in uniform fashion." AE Br. 42. Accordingly, they have no need to prove that individual class members were actually injured by the shakedowns, so long as they can show that the supervisory defendants as a group intended to inflict harm. *Id.* This is wrong. As discussed, *supra* pp. 9-11, the existence of a common plan is not sufficient to prevail on an Eighth Amendment claim; plaintiffs must show that the plan was unconstitutional as to each individual class member, AT Br. 30-31. Because many components of the alleged common plan would only be unconstitutional in certain, individual cases— such as rear cuffing and waiting in a common area during the cell searches, *supra* pp. 12-13—classwide evidence cannot resolve the key issues in this case, *Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 514-15 (7th Cir. 2009).

Plaintiffs' theory also ignores that section 1983 claims, including ones for deliberate indifference, require plaintiffs to demonstrate that the individual class

members were actually harmed by defendants' conduct, and that this inquiry cannot easily be conducted on a classwide basis in this case. *See, e.g., Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) ("Lord's claim fails on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort (an Eighth Amendment violation) without then developing evidence of a recoverable injury."); *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) ("Section 1983 is a tort statute, so Bridges must have suffered a harm to have a cognizable claim."); *Doe v. Welborn*, 110 F.3d 520, 523 (7th Cir. 1997), *as amended* (May 29, 1997) (showing of knowing disregard of substantial risk of serious harm "presumes a critical condition precedent to the plaintiff's case has been satisfied: proof of actual injury"). To be sure, plaintiffs need not show as a prerequisite to certification that *all* class members were injured, *Suchanek*, 764 F.3d at 757-58, or that every element of each claim can be satisfied by classwide proof, *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 444 (7th Cir. 2015). But assessing the number and type of individualized inquiries that a court would need to conduct to determine liability, and the ultimate efficiency of proceeding on a classwide basis in light of those inquiries, is a critical part of the predominance inquiry. *See, e.g., Tyson Foods, Inc.*, 136 S. Ct. at 1045. Here, even if a jury finds that the supervisory defendants had an unconstitutional policy, the district court would still need to conduct complex, individualized inquiries to determine which

components of the policy each inmate was subjected to, and whether those caused

him injury.  AT Br. 31-32.[10]

Plaintiffs next attempt to dismiss these variances by contending that if

defendants show that their "plan was not created to humiliate class members and

was instead justified by a legitimate penological interest," a rogue officer's conduct

"would have no bearing on [defendants'] liability."  AE Br. 43.  Stated another way,

plaintiffs argue, if the plan "was justified by a legitimate penological purpose,"

defendants would be entitled "to judgment in their favor on the class's claims as a

whole."  *Id.* at 44.  Plaintiffs rely primarily on *Amgen* for this theory.  But in *Amgen*,

a securities fraud case, the Court determined that predominance was satisfied

because the common question at issue—whether alleged misrepresentations and

omissions were material—would be judged under an objective standard that applied

"equally for all investors composing the class."  568 U.S. at 459; *id.* at 460 ("In no

event will the individual circumstances of particular class members bear on the

---

[10]  For example, 14 of the 111 inmates whose accounts are in the record reported a
"usual" or "normal" top-to-bottom search rather than a reverse strip search.  *See*
Doc. 491-7 at 13(6:10-18) (Cowart); 62(9:1-10) (Bartholomew); 29-30(4:23-5:2)
(Russo); 33(6:1-10) (Hopkins); 45(6:18) (Jones); 55-57 (Barnes); 72(6:7-13) (Boose);
82(5:2-7) (Bosomworth); 87(6:6-14) (Burnside); 92(5:1-7) (Carrillo); 162(7:1-14)
(Lay); 134(8:20-24) (Hall); 187(4:11-13) (Moreno); 191-93 (Ruiz).  These inmates
thus could not show they were harmed by any policy requiring reverse strip
searches.  As a result, even a jury's conclusion that such a policy existed would not
subject defendants to liability as to these inmates on a reverse strip-search claim.
*See Babcock v. White*, 102 F.3d 267, 271 (7th Cir. 1996) ("failure to prevent exposure
to risk of harm"—as opposed to failure to prevent harm—does not render a
defendant liable on a claim for damages).

inquiry."). A "failure of proof" on that question "would end the case, given that materiality is an essential element" of the claims. *Id.*

Here, by contrast, each class member would remain free to pursue an individual claim against these defendants or any other defendant that *he* endured an unconstitutional search. *Supra* pp. 4-6. The fact that these defendants are supervisory officials does not alter this analysis. On the contrary, as plaintiffs note, some of the supervisory defendants were present for the shakedowns, while others were not. AE Br. 5-6. Therefore, a supervisory defendant could be found not liable for crafting a widespread plan to violate the inmates' constitutional rights, yet still be accountable for witnessing, yet turning a blind eye, to a specific, unconstitutional search. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). The *Amgen* framework thus provides no assistance to plaintiffs here.

Plaintiffs' remaining arguments are largely based on misstatements of defendants' brief. For instance, plaintiffs assert that defendants improperly "urge a categorical rule protecting supervisory defendants from class certification in all contexts." AE Br. 47. This is untrue. Defendants instead made the commonsense observation that "[s]upervisory claims are . . . more difficult to resolve on a classwide basis." AT Br. 33. Here, there are 22 supervisory defendants, all of whom, by plaintiffs' own account, were involved in the shakedowns in different capacities. AE Br. 4-6. As one example, some supervisors attended several shakedowns, whereas others were present for some or part of a single shakedown, and still more only received updates about the shakedowns. *Id.* at 4-6.

Additionally, some supervisory defendants were involved in every step of the planning process, while others, such as facility-specific supervisors, received instructions the morning of the shakedown. *Id.* This variation—coupled with the divergent accounts of the individual inmates—make classwide disposition particularly challenging here. *See* AT Br. 33; *McFields*, 982 F.3d at 516-17.

Similarly, plaintiffs accuse defendants of taking the position that "if damages calculations need to be tried separately, class certification is improper." AE Br. 49. In fact, defendants recognized that although "the need for individual damages determinations at a later stage of the litigation does not itself justify the denial of certification," courts may correctly decide that "individual damage determinations will overwhelm the common questions," rendering class certification an inefficient vehicle. AT Br. 34 (cleaned up). The district court should have reached that conclusion because holding nearly 10,000 separate damages trials—as even plaintiffs concede could occur, AE Br. 50—on top of individual inquiries on liability, does not serve judicial economy.

Finally, plaintiffs do not meaningfully respond to defendants' argument that the district court abused its discretion by concluding that superiority was satisfied. Instead, they suggest in a footnote that defendants did not properly raise this argument, although they cite no cases supporting that theory. *Id.* at 51 n.20. But as defendants explained, AT Br. 35, the court's determination that "class action is the superior method for adjudicating Plaintiffs' claims," Doc. 519 at 12; A12, improperly disregarded the varying and inconsistent accounts of the shakedowns,

as well as the reality that this case could only be resolved through nearly 10,000 mini-trials on liability and damages.

## CONCLUSION

Defendants-Appellants request that this court reverse the district court's order granting plaintiffs' motion for class certification.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

**SARAH A. HUNGER**
Deputy Solicitor General

100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-3312

/s/ Katelin B. Buell
**KATELIN B. BUELL**
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2772
kbuell@atg.state.il.us

Attorneys for Defendants-Appellants

February 19, 2021

**CERTIFICATE OF COMPLIANCE WITH LENGTH LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of

Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style

requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has

been prepared in proportionally spaced typeface using Microsoft Word 2019, in 12-

point Century Schoolbook font, and complies with Federal Rule of Appellate

Procedure 32(a)(7)(B)(ii) and Circuit Rule 32(c) in that the brief contains 6999

words.

/s/Katelin B. Buell
KATELIN B. BUELL
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2772
kbuell@atg.state.il.us

**CERTIFICATE OF FILING AND SERVICE**

I certify that February 19, 2021, I electronically filed the foregoing Reply

Brief of Defendants-Appellants with the Clerk of the Court for the United States

Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I further

certify that the other participants in this appeal are registered CM/ECF users, and

thus will be served by the CM/ECF system.

/s/ Katelin B. Buell
KATELIN B. BUELL
Assistant Attorney General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2772
kbuell@atg.state.il.us